## CITY OF AMARILLO v. FORD.

(Circuit Court of Appeals, Fifth Circuit. March 10, 1923.)

No. 3878.

1. **Eminent domain** ⟺166—**In proceedings to enjoin overflow of plaintiff's land by municipal sewerage plant, defendant entitled to condemn right of way for ditch.**

   In an action to enjoin a city from permitting the overflow of its sewerage disposal plant to be carried onto plaintiff's adjoining land in times of flood or heavy rainfall, it was error to strike from respondent's answer that part thereof seeking to condemn such part of plaintiff's land as was necessary to take care of the overflow by ditches, where the maintenance of the sewerage system was a public necessity, maintained for many years.

2. **Equity** ⟺39(4)—**In proceedings to restrain overflow of plaintiff's land from municipal sewerage disposal plant, federal court has jurisdiction to entertain condemnation proceedings by city.**

   A federal court of equity, having taken jurisdiction at plaintiff's suit to restrain the overflow of his land by a municipal sewerage disposal plant, had jurisdiction to dispose of the entire controversy, including the granting of relief to the municipal corporation on its prayer for condemnation of sufficient of plaintiff's land to provide ditches for the proper dis-

⟺For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

posal of such overflow, and under proper pleadings the court can ascertain the compensation to be paid and allow damages meanwhile inflicted on plaintiff's land.

3. **Municipal corporations** ☞827(1)—**Property owner not entitled to damages caused by natural flow of water, but restricted to injury caused by overflow of sewerage on his land.**

A property owner, whose land adjoining a municipal sewerage disposal plant was injured by the overflow from such plant during times of flood and high water, was entitled to damages therefor; but under evidence showing that, if there were no sewerage, his land at time of heavy rains would still be flooded with water, he can recover nothing for damage effected by the natural flow.

Appeal from the District Court of the United States for the Northern District of Texas; James C. Wilson, Judge.

Suit in equity for injunction by William Ford against the City of Amarillo. From a decree for plaintiff, defendant appeals. Reversed and remanded.

C. E. Gustavus, of Amarillo, Tex., for appellant.

Ben H. Stone and J. O. Guleke, both of Amarillo, Tex. (Stone & Guleke, of Amarillo, Tex., of counsel), for appellee.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. The city of Amarillo had since 1904 maintained a sewerage system which emptied into disposal tanks constructed on property owned by it adjoining the property of complainant Ford. This property had been owned for many years by the appellee's (Ford's) uncle. After his death it became the sole property of the appellee on July 20, 1921. It appeared that during the rainy season, or on the happening of heavy rains, the sewerage system and the city's lands would not contain all of the sewerage, but that some of it, with the surface water, would flow onto the property of complainant.

On July 29, 1921, appellee Ford, a citizen and resident of New Mexico, brought this suit in equity in the United States District Court for the Northern District of Texas, alleging that the maintenance of this sewerage system and its overflow, and the carrying of sewerage upon his property, was a continuing nuisance which depreciated the value of his property, consisting of 106⅔ acres, from $125 per acre, its present value if it were not for the escaping sewerage, to $50 per acre; that he did not wish to sell, and that its proximity to the city of Amarillo gave to said property a much larger prospective value. He further alleged that the city had wholly failed to correct the evils complained of, and he prayed for a temporary injunction, pendente lite, and on final trial for a permanent injunction, restraining the city from permitting said sewerage to flow upon, over, or across his land, and for general relief, or, in the alternative, "if upon hearing the equities herein would be better served by damages," for damages in the sum of $8,000, with 6 per cent. interest from date of commencement of suit.

The city answered said bill, averring that its sewerage system was necessary for the health and comfort of its inhabitants; that it finished said system in December, 1905, and has conducted it continuously ever

since. Originally such sewerage was emptied into earthen tanks, from which by lateral ditches the accumulation of surplus water was conveyed in a northerly direction, and used for irrigation purposes, which under normal dry weather conditions practically took up, and disposed of, the entire water from said sewerage system on defendant's land, without ever reaching the tract of land described in plaintiff's petition. This sewerage plant was further improved on or about March, 1921, at a cost of about $25,000, by putting in operation Imhoff sewerage disposal tanks upon defendant's own land, and defendant had in every way endeavored as far as possible to operate, conduct, and maintain its sewerage plant in an efficient, sanitary and scientific manner, without injury or hindrance to any adjacent landowner. The section of the country where the land of complainant and defendant is located is broken and hilly. There are depressions and drains leading over and across defendant's land, to and across complainant's land, from a considerable watershed, and in rainy seasons, or from heavy rains, the flood waters of said surrounding territory accumulate and flow across defendant's land to the tract of land claimed by complainant in large quantities, on account of its topography and natural conditions. Owing to the depressions and natural condition of defendant's tract, such flood waters at times attain a magnitude of about 200 yards wide and 2 to 2½ feet deep in such overflow across plaintiff's tract of land, for which defendant is in no manner responsible; such flood waters recurring each year and rendering a so-called valley upon plaintiff's land marshy and boggy during such seasons, which would in a large measure be the case if defendant maintained no sewerage system on its land. The natural depression across plaintiff's land has been allowed to grow up with rank grass and weeds, obstructing the flow of water across the same, thus causing the water to spread out over said land and to overflow it. This could be prevented by digging a ditch and preventing the growth of such grass and weeds, with the result that the water from defendant's sewerage plant could be very largely, if not entirely, confined to a channel, thus averting the condition of which plaintiff now complains. Defendant, before the filing of the present suit, endeavored to secure permission to go upon plaintiff's land, plow a ditch and drainage way for waters, and construct a ridge or passageway over such ditch, but permission was refused. During the rainy season, with the volume of water coming from defendant's sewerage plant, it would be impossible, with all the tanks and reservoirs which could be constructed, to appropriate, use, and confine all of the water from its sewerage plant; but some of it would run down to and across the land claimed by plaintiff, and restraining defendant from permitting said water from running over and across said land would in effect deprive defendant of the use of its sewerage plant, to the great detriment and injury of its inhabitants. There is but a small area in acres affected in any manner by the sewerage plant, which area can be limited to not exceeding one acre by plowing and digging a ditch or drainway, located where the drain or flood waters would naturally overflow said land, and defendant is now, and was heretofore, willing and able, at its own cost and expense, to construct a ditch across the land. Under the laws of

Texas and defendant's charter powers it can condemn and appropriate lands for public use, and desires to acquire a right of way and easement in which it may plow furrows and dig a ditch ample and sufficient to confine and drain the surplus water from its sewerage plant across the land described in plaintiff's petition. It therefore prayed that all necessary and proper orders be had and made for the condemnation of such tract of land, for which defendant was ready and willing to pay to plaintiff its reasonable and fair value, and that said strip of land be condemned, and for general relief. Further answering, the city prayed, in the event a decree granting an injunction was entered, that it be suspended until condemnation proceedings might be had and brought to a determination in the proper state court.

On exceptions, the court struck so much of the answer as claimed the right to condemn and asked for relief of that nature. Upon final hearing, it rendered a decree adjudging that such sewerage system as maintained was a nuisance; that it was practically possible to keep such sewerage off of and away from the land of complainant; that the existence of such sewerage injures complainant in the full and complete enjoyment of his land and deprives him of a large part of its prospective value and greatly affects its present value. Wherefore it permanently enjoined and restrained defendant from causing, allowing, or permitting any part of its sewerage to flow upon, over, or across complainant's land, as set out in said original petition.

The court overruled a motion to modify said decree by stating it was without prejudice to the defendant's right to institute condemnation proceedings in a court of the state to condemn such land of complainant as was needed by it. An appeal is taken from such final decree.

1. The creation and maintenance of a system of sewerage for a city is an important municipal duty, and such a system is a work of public necessity, which the city of Amarillo is authorized to construct, maintain, and operate. Vernon's Ann. Civ. St. 1914, Texas, art. 1096d. As was stated in the case of New York City v. Pine, where an injunction had been granted restraining the city from diverting water from a river:

"This is not a case between two individuals, in which is involved simply the pecuniary interests of the respective parties. On the one side are two individuals claiming that their property rights are infringed—rights which can be measured in money, and that not a large sum; and, on the other, a municipality undertaking a large work with a view of supplying many of its citizens with one of the necessities of life." New York City v. Pine, 185 U. S. 93, 97, 22 Sup. Ct. 592, 594 (46 L. Ed. 820).

Here the complainant does not reside upon the land in question, and as far as the record discloses has never resided there. It is simply a piece of property owned by him possessing pecuniary value. The bill alleges a maximum deterioration of the property, by reason of the alleged nuisance, amounting to only $75 an acre, approximately $8,000. According to the testimony of complainant, the value of the land, if the sewerage were taken off, would be about $75 an acre. There is testimony in the case to the effect that the condemnation of a portion of the property and the carrying out thereon of an extension of ditches would not damage the rest of the property. The property has never

been·used by the plaintiff as his residence, nor has any situation been shown which would render a decree for damages an inadequate relief. The sewerage system has been in existence for many years, and represents a large investment in a public work of necessity. We therefore think that the grant of an injunction, instead of assessing damages, was erroneous in this case.

[1] 2. We think that the court erred in striking so much of the answer as sought to condemn such part of the plaintiff's land as was necessary to take care of the overflow from its sewerage plant. It was substantially proved without contradiction by the evidence that to effect the disposal of the surplus water, so as to prevent it from overflowing the Ford land would require the making of a ditch sufficient to carry such water through such land. The sewerage plant of defendant has been in existence since 1905. The overflow of the land now owned by the plaintiff is not a new thing. It has occurred before. The maintenance of a sewerage system to the city of Amarillo is a public necessity, and we are of opinion that the city should be permitted to acquire sufficient land to effect a disposal of this water, which it is willing to do.

[2] The court of equity, having taken jurisdiction over the land at complainant's solicitation, has jurisdiction to dispose of · the entire matter. The complainant in its bill invokes the jurisdiction of the court in this cause to assess damages in lieu of granting an injunction, "if upon hearing the equities herein would be better served by damages." The court can, under the pleadings and prayers of both parties, itself ascertain and decree them, or, if necessary, frame issues and submit to a jury the question of the amount to be paid by the city for the acquisition of the property needed by it. If it is proven that there has been other damage meanwhile inflicted upon the plaintiff, such as his inability to rent his land by reason of an unlawful overflowing thereof, such damages can be ascertained and the decree so framed as to include the same. Western Union Tel. Co. v. Georgia R. & Bkg. Co. (D. C.) 227 Fed. 277, 291, 292; New York City v. Pine, 185 U. S. 93, 104, 22 Sup. Ct. 592, 46 L. Ed. 820.

[3] It should be remembered, however, that under the allegations and facts of this case it would seem that, were there no sewerage, there would still be the flow of the storm waters during the rainy season, or in time of heavy rains, from defendant's land to plaintiff's land, and for damage effected by this natural flow defendant would not be liable.

The decree of the District Court, granting the injunction, is therefore reversed, with instructions to the court to revoke the order striking a portion of defendant's answer, and to permit the defendant to acquire such portion of plaintiff's land as is needed for it to handle the overflow of water from its sewerage plant, to assess or cause to be assessed the value thereof at what amount should be paid by the defendant to the plaintiff for such strip so taken, and for any other legal damages which he may have sustained, and that relief by way of injunction be denied, unless the defendant should fail within a reasonable time to pay·the damages decreed by the court, and to construct a ditch

or drain on the land acquired under said decree, sufficient to carry any surplus water at any time discharged from its sewerage system, and for such further proceedings as are consistent with this opinion.

Reversed and remanded.